Appealing a decision of the lower court in Macon County v. Alwood v. Largent, I am here for the appellant Rachel Alwood. We are here appealing a decision of the lower court in Macon County which transferred custody from Rachel Alwood to the appellee Jeremy. The child at issue here is Trey Alwood who was born December 15, 2002. Rachel and Jeremy were never married. Rachel was the custodial parent of this child. She also had two other children from another father. One of the children's name was Abigail. In October of 2010, Rachel slapped Abigail across the face. DCFS was subsequently called. The children were removed from her care. Trey was placed in the custody of Jeremy and Abigail and the other child was placed in the custody of his father. Pursuant to that, Jeremy filed an order of protection on behalf of Trey and received custody, emergency custody that way. A couple months later in February 2011, he filed a petition for modification of custody and that hearing was conducted in September and October of 2011. After hearing the evidence, the lower court granted the petition for modification of custody and transferred custody of Trey to Jeremy. We are here appealing that decision. We argue that it is against the manifest weight of the evidence for the lower court to find both that it was a change in the circumstances of either Trey or of Rachel and B, that it was not in the best interest of Trey to transfer custody to Jeremy. First of all, your honors, it was against the manifest weight of the evidence for the lower court to find that there was a change in circumstances. In this case, the precipitating factor which caused the transfer of custody from Rachel to Jeremy was the fact that Rachel slapped Abigail, the other daughter. As of the date of the hearing, which is in September and October 2011, Abigail had been returned home. In fact, she had been returned home to Rachel back in the summer of 2011 and she has been with her since. She is the one who she slapped. There has never been an allegation that Rachel slapped Trey. There has never been an allegation that she abused Trey. There has never been an allegation that she physically abused Abigail before that October 2010 incident or since. There has never been such an allegation. So the change in circumstances which the lower court has found was that there was one slap to one child who has since been removed. Nothing Rachel has done to Trey. She has done absolutely nothing. And it was against the manifest weight of the evidence for the court to find that there was a change in circumstances. I assume that argument was made to the trial court? Your honor, if I may, I was not the trial counsel from reading. Have you read the record? I did. I did read the record. So the answer is yes? If I recall correctly, it was, again, there was an argument that there was no change in circumstances. The counter argument to that was made by Jeremy and his counsel was that there were other events which occurred in 2006, 2007, 2008. That there were also histories of violence back then. My argument to that, your honor, is those were so long ago. The precipitating event in this one was October of 2010. Everything else which happened occurred in 2008 or prior. Nothing else happened. Nothing else happened to the children. Trey was kicked, which Mr. Hoppe will talk about and is undisputed was kicked by Rachel's boyfriend, Will. But that was in 2008. That was three years before this hearing. Nothing has happened to Trey since then. He was not injured. There were no marks. No one called any police. Nothing happened. There was no change in circumstances. And it was against the manifest weight of the evidence for the court to find that there was a change in circumstances. Additionally, as stated in Remarriage of Gordon, which the first district appellate court, it states in an isolated act of excessive force exerted by the custodial parent on a child does not necessarily justify the action of a change of custody. Other remedies can include injunction and counseling. That's exactly what happened here. After this happened and DCFS became involved, Rachel went to counseling, she did parenting classes, and she got a medication. She is doing much better. DCFS, the youth advocate worker, her caseworker testified she's doing much better since on medication. There is no change in circumstances. There was one slap to one child who has been returned home. That is it. And with regard to the best interest, Your Honor, it was not in the best interest for this child to stay in Jeremy's care. The record had evidence, people testifying that. Trey stated on numerous occasions that he wants to spend more time with his father. He was living with his father. His father worked all the time. His stepmother testified she's the one who gets him on and off the bus. She's the one who makes him dinner. She's the one who helps him with his homework. He doesn't probably get to see his father. Being raised by a step-parent is not in this child's best interest. He needs to be raised by his mother. His mother is on medication. She's doing much better. She deserves to have custody. It was against the manifest way of the evidence for this court to find that the modification was necessary or in the best interest. There's two step- his step-brother and sister still live with Rachel. There's been no allegations of any abuse or neglect since 2008 or 2010 since this occurred. And it was against the manifest way of the evidence, Your Honors. I respectfully request that Your Honors reverse the lower court and return the custody of Trey to Rachel. Counsel, your burden before this court is to convince us that no reasonable person could have made the decision that Judge Little did in this case. Correct. Correct. And no reasonable person could have, Your Honor, because as stated, there was the event which led to the removal of Trey from Rachel was a slap of Abigail. Abigail, who was a three-year-old- That's all that Judge Little spoke of? He spoke of- that's what was the precipitating factor. He spoke of in his decision- Well, to say it's the precipitating factor doesn't mean that's the only thing he considered, is it? That is correct, Your Honor. It is the precipitating factor, but other things which were considered were the histories of events which occurred in 2008, 2007, and 2006 between Rachel and her boyfriends. Rachel has since changed. She has attended parenting classes. She's attended her counseling. She's on medication. The boyfriend that she is living with now, he also, pursuant to DCFS request, he has attended counseling. He's attended classes at New Life Center, and he's attended parenting classes. Things have changed. There was no change in circumstances. That is one of the things the lower court had to find, and I truly believe it was against the manifest rate of evidence. There was no clear and convincing evidence that there were changes in circumstances with regard to Trey, and if there were changes in circumstances, it was for the better in the fact that Rachel has improved her parenting skills dramatically. I'm asking Your Honors to reverse the lower court and return Trey in custody to Rachel. Thank you. Thank you, Your Honors. We respectfully disagree with the arguments of counsel. A precipitating event, yes, but this is a case in which we apply the IMDA, and particularly Section 610, too, and you look at all of the factors that are brought out, and the precipitating factor, yes, the woman, meaning Ms. Allwood, was the mother. She slapped the child, and I think a slap is perhaps the best way that they could phrase it. If you look at Defendant's Exhibit 2, there's a picture of... Well, is a slap a substantial change in circumstances? Well, it's the factor that DCFS removed the child from the house, and Ms. Allwood was charged with domestic battery, and without the order of protection, which, by the way, all of those orders were entered by agreement, because DCFS said, you're going to put this child in a safe place, or we're going to file a juvenile proceeding and do it ourselves. And that's why they closed the case on December 31, 2010. So is there a change of circumstances? Well, the mother doesn't have the child. The child is taken from her. DCFS has intervened. Mother doesn't have any contact with the child for six weeks after October 31, when she was locked up in jail. She had supervised visitation after that, and that supervised visitation didn't go exactly smoothly. She had a big ruckus with her sister, yelled at her kids. She wasn't on medication until June or July, didn't tell her counselor about it until a month later. Counselor testified she was resistant to counseling and didn't start that until February. The boyfriend whom we just heard about has gone to counseling. I asked him, and I was trial counsel, so perhaps I remember it a little better. I asked him, did you take anger management counseling? I don't remember. But I'm cured. I have no further problems, because I don't remember. The answer was, I don't remember? Is that what you said? That is exactly right, Your Honor. It's in my brief. I have highlighted it and put the page number of the record where you can exactly read what he actually said in the courtroom. Couldn't remember. You have to look as well that the supervised visitation with Rachel Allwood continued until August, end of August, 2011. We started the hearing in September, and the supervised visitation after her sister quit as the supervisor at Easter time was twice a week, two hours, and that was supervised by a youth advocate in their facility. There was no observations made by a youth advocate until the end of August, and the last testimony would have been in October, where they actually saw observations of this child being taken care of in an unsupervised situation, about two months before the actual final hearing. So, change of circumstances, absolutely. And when you look at the fact the teachers testified, the child was behind in both reading and math. As soon as dad got him, he was in a Title I reading program. His math skills, his reading skills picked up to the point where the teachers testified. He went from a low student to an average student in the period of time... Went from a what student? A low student. A low student. He had to be basically tutored, your honor, with a Title I reading and math program when dad received him. Angelique Maxwell, who was our DCFS worker who did the initial investigation, testified that just seeing this child after he was picked up, she described him as pale, underweight, and afraid to get anybody in trouble. And she has a child in the same school where the child attends, and even though her involvement was done December 31, she saw the child frequently. She was a witness and testified. He's happy. He's no longer pale. He's gained weight. Seems like a wonderful child. Best interest? I believe it's all there. Change of circumstances. You heard Ms. Hawkins' argument, where did she go wrong in her representations to this court? Where did she go wrong? I don't think she went wrong. I think the decision's right on the numbers. Where did counsel go wrong in her representations to this court? About what? Him. Very simply, if you look at all of the information that's down there, I think there are eight numbered parts dealing with violence that I listed out by number in my brief. And if you believe what that testimony is, William Weaver, who's the boyfriend, was strangling Rachel Allwood in the presence of her children. John Hemingway testified to that. He testified as to the red marks. He testified that she called him to throw William Weaver out of the house. We have a whole series of events that lead up to the point where DCFS intervened and took this child, if that answers your question. I mean, there's all of that, and then add in the fact the child was behind in school, had never gone to summer school, even though behind in reading and math, father put him in summer school, first year he hadn't. All sorts of, as you look at the Bates case, if you look at the record and you take the inferences of the evidence, in the best case scenario for the appellee, there's no doubt that this decision was correct by Judge Little. It was a two-day trial. We had the evaluator that determined that Rachel Allwood had a problem with her decisions. We had William Weaver's evaluation from the evaluator at Heritage. That's not DCFS. These folks are contracted and they're referred over. We have the testimony of the teachers. We have the testimony of the child's counselor, who started seeing the child as of January 2011. And by the way, the two witnesses who recall, one from Youth Advocate and the counselor for Ms. Allwood, neither one, when I asked them the question, will you make, can you excuse me on that, but the question was asked. Do you have a recommendation as to who ought to have custody of the child? Both of them declined to make a recommendation. Yet, Angelique Maxwell made the recommendation and all of the other witnesses on the plaintiff that this child's best interests are with Mr. Larger. And I believe that record supports it. Other questions? By the way, if we say no other person could reach this decision, I assume you have attached with it the Guardian-Ad Litem's report. Guardian-Ad Litem reported in April, not only that there was a change of circumstances, but that it was clearly, by clear and convincing evidence, that it is in the best interest to change custody. Recommended supervised visitation. Now, Ms. Allwood did not start medication until after the GAL report. Was that the deciding factor? Well, it may have been because one of the statements made by the Guardian-Ad Litem was Andrew Borey, by the way, Andrew Borey, an attorney who's been around a while, and he said she hasn't done anything to correct the problem. In fact, it was ongoing at that time. All the way up to Easter, she blew up, stormed out of the house, left her kids with her sister and told them, go away, I don't want to see you, words to that effect. Scared Trey so much that he didn't want to see his mother and didn't see her for a month or six weeks after that. So we have gaps even in our supervised visitation. So I would suggest to you that if you take and apply the Bates standard to this case, there's no question that you should affirm this decision. Any other questions? Seeing none, thank you, Counsel. Thank you, Your Honor. Appreciate the time. You're welcome. Goodball, please. Thank you, Judge. Very briefly, Your Honors, I'd like to point out with regard to the Guardian-Ad Litem report of Andy Borey, that was done in April of 2011. That was done before Abigail was returned home. That was done before Rachel completed her classes and before she started medication. I believe that that report should have, Mr. Borey should have examined her again, should have interviewed again under different circumstances. He should have reviewed her and interviewed her under the same circumstances that the judge saw in September and October. Relying on the GAL report, which was five, four, five months old at that time, I don't know whether he did or not, whether Judge Little did or not, but there were many changes which occurred since that GAL report. And then with regard to the fact that the counsel indicated that DCFS had removed the children, they did, but two of them returned home. Two of them haven't returned home. And the one which was injured, Abigail, hasn't returned home. And we respectfully request, Your Honors, to reverse the lower court judgment and grant custody back to Rachel. Thank you, Ms. Hawkins. Thank you, Mr. Hoff. The case is submitted and the court stands at recess.